UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RODNEY FOSTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:18 CV 1014 CDP |
| | ) |
| EXETER FINANCE LLC, et al., | ) |
| | ) |
| Defendants. | ) |

# **MEMORANDUM AND ORDER**

Plaintiff Rodney Foster brings suit under the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681i(a), against Chex Systems, Inc. ("Chex"),[1] a specialized consumer reporting agency engaged in the business of assembling, evaluating, and disbursing consumer banking history reports to third-party financial institutions. Foster claims that Chex willfully and/or negligently failed to reinvestigate a disputed tradeline on his consumer banking report, causing him actual and emotional distress damages. Chex asserts that its reporting of the disputed tradeline was accurate and its reinvestigation of Foster's claim was reasonable. Both sides have moved for summary judgment.

I will grant Chex's motion because the evidence shows 1) there was no factual inaccuracy in its reporting, and 2) Chex conducted a reasonable

---

[1] Chex is the sole remaining defendant in this litigation.

reinvestigation. Conversely, I will deny Foster's motion because he admits the facts he argues support his claims are disputed. In addition, Foster's misstatements of the evidence, conclusory arguments, and repeated failure to comply with the Local and Federal Rules has increased the burden and expense to both parties, so I will impose a limited, statutorily-provided sanction on Foster.

**Factual Background**

On December 2, 2010, Foster opened a bank account with First Bank (the "account"). *Id.* First Bank's account records, consisting in part of authenticated bank statements from December 2013 through April 2014, show that the account accrued a negative unpaid balance totaling $779.88.[2] ECF 93-2. The account was charged off (i.e. closed by the bank) with that amount outstanding on April 14, 2014. ECF 77-1 at pg. 2. First Bank reported the account to Chex as a tradeline, documenting the account as charged-off for non-sufficient funds. *Id.*

The FCRA allows consumers to dispute an item on their CRA-prepared consumer report if they believe the reporting is inaccurate or incomplete. 15 U.S.C. § 1681i(a). On March 28, 2018, Foster mailed a dispute letter to Chex to

---

[2] The First Bank account statements document dozens of unique deposits and withdrawals, ostensibly indicative of daily banking activity. Many of the transactions, including payroll direct deposits, insurance deductions, and subscription payments, are specifically made in Foster's name. ECF 93-2. Foster generally alleges that First Bank's records are erroneous, and that he does not owe First Bank any money on the account. Affidavit 1, ECF 85-4.

request a reinvestigation of the charged-off First Bank tradeline. ECF 77-1 at pg. 2. Foster's letter stated:

> When I recently tried to open a checking account, I was informed that I had negative entries in my ChexSystems record. To my knowledge, I have never had non-sufficient funds and I am not aware of any negative entries. Kindly forward me a copy of my ChexSystems record so that I may verify its accuracy.

ECF 86-2. Foster attached a photocopy of his driver's license and a snippet of an unrelated St. Louis Community Credit Union bank account statement to the dispute letter.[3] ECF 93 at pg. 2-3.

After a CRA receives notice of a consumer dispute, § 1681i(a) imposes two duties on the CRA: "(1) the duty to conduct a 'reasonable reinvestigation' into the dispute, including consideration of 'all relevant information'; and (2) the duty to provide notification of the dispute to a furnisher of information and include 'all relevant information regarding the dispute' in that notice." *Edeh v. Equifax Info. Servs., LLC*, 974 F. Supp. 2d 1220, 1233 (D. Minn. 2013), *aff'd*, 564 F. App'x 878 (8th Cir. 2014). On April 7, 2018, Chex advised Foster by letter that it would initiate a reinvestigation of the account, and on April 12, 2018, Chex faxed First

---

[3] Foster stated in his first affidavit that he had been denied a bank account with St. Louis Community Credit Union because of the reported First Bank tradeline. ECF 85-4 at ¶ 15. It is unclear whether the alleged denial refers to a different SLCCU bank account—Foster has not explained when or how he was able to open the account disclosed in the dispute letter he sent to Chex. Additionally, Foster's affidavit only references accounts he sought *before* he sent his request for reinvestigation to Chex, so denial of those accounts could not have been caused by Chex's alleged failure to reinvestigate.

3

Bank a boilerplate "Request for Investigation" form. ECF 86-1. The request form identified Foster's account and parroted the substance of Foster's dispute: "Consumer states that he never had non-sufficient funds (NSF) on the above account and not aware of any negative entries." *Id*. Immediately below, the form posed two queries, followed by fillable Yes/No boxes and a space to provide additional comment: "1) Is the reporting reason non-sufficient funds (NSF) accurately submitted to ChexSystems? If no, please provide the correct reason for reporting. 2) Is the above information accurate and should remain in ChexSystems?" *Id*. The form directed First Bank to research the account and respond upon completion of the reinvestigation. *Id*. First Bank faxed the completed form to Chex later that day, checking "Yes" in response to the two questions. ECF 86-1 at pg. 5. On April 17, 2018, Chex mailed a letter to Foster indicating that its reinvestigation was complete and that the disputed tradeline had been verified as accurate. ECF 77-1 at pg. 3. Foster thereafter filed the instant lawsuit, alleging Chex negligently and/or willfully failed to conduct a reasonable reinvestigation. 15 U.S.C. § 1681i(a).

**Summary Judgment Standard**

The summary judgment standard is well settled. Summary judgment must be granted when the pleadings and proffer of evidence demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a

matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). I must view the evidence in the light most favorable to the nonmoving party and accord him the benefit of all reasonable inferences. *Scott v. Harris*, 550 U.S. 372, 379 (2007). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

The movant bears the initial burden of demonstrating the absence of an issue for trial. *Celotex*, 477 U.S. at 323. Once a motion is properly made and supported, the nonmoving party may not rest upon the allegations in his pleadings but "must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." *Id*. at 324; *Torgerson*, 643 F.3d at 1042. A factual dispute is "genuine" for summary judgment purposes only when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "Self-serving allegations and denials are insufficient to create a genuine issue of material fact." *Anuforo v. Comm'r*, 614 F.3d 799, 807 (8th Cir. 2010)). Put differently, "[m]ere allegations, unsupported by specific facts or evidence beyond the

5

nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin*, 483 F.3d 516, 526–527 (8th Cir. 2007).

The fact that both parties have moved for summary judgment has no impact on my analysis. "[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits." *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983). Instead, each summary judgment motion must be evaluated separately on its own merits to determine whether a genuine issue of material fact exists and whether the movant is entitled to judgment as a matter of law. *Husinga v. Federal-Mogul Ignition Co.*, 519 F. Supp. 2d 929, 942 (S.D. Iowa 2007).

## Chex's Motion for Summary Judgment

Chex is entitled to summary judgment for at least three independently sufficient reasons. First, Foster failed to specifically controvert Chex's statement of material facts, necessitating summary judgment in Chex's favor. Second, Foster fails to provide evidence of a genuine dispute over the accuracy of Chex's reporting, thus he cannot satisfy his prima facie burden under the FCRA, § 1681i. Finally, giving Foster the unwarranted benefit of a review of Chex's reinvestigation, I conclude that the reinvestigation was reasonable as a matter of law.

Foster neglected to file a responsive statement of material facts in opposition to Chex's motion for summary judgment.[4] E.D. Mo. L.R 7-4.01(E). If a nonmoving party fails to properly address an assertion of fact made by a summary judgment movant, the Federal Rules provide that the Court may consider the fact undisputed. Fed. R. Civ. P. 56(e)(2). The Local Rules, however, require it: "All matters set forth in the statement of the movant **shall be deemed admitted** for purposes of summary judgment unless specifically controverted by the opposing party." E.D. Mo. L.R 7-4.01(E) (emphasis added); *see FURminator, Inc. v. Kim Laube & Co.*, 758 F. Supp. 2d 797 (E.D. Mo. 2010). Accordingly, I may consider as admitted Chex's statement of uncontroverted material facts. *See Holloway v. Union Pac. R.R. Co.*, 762 F. App'x 350, 352 (8th Cir. 2019) ("In light of [plaintiff's] failure to comply with Rule 7-4.01(E), we conclude that the district did not abuse its discretion by admitting [defendant's] statement of facts.").

Chex's statement of uncontroverted material facts sets forth the following:

21. In responding to [Foster's] dispute, Chex followed its procedures and did not identify any inaccurate information on [Foster's] Chex report.

22. Plaintiff has not provided any evidence in this case to demonstrate that Chex's reporting of the account was in fact inaccurate.

---

[4] Foster eventually filed responsive statement of material facts with his reply to Chex's memorandum in opposition to his own motion for summary judgment. ECF 98. However, Foster's response was both untimely—by over two months—and filed without leave of Court, in contravention of Local Rule 7-4.01(C).

23. Chex's reporting of the account was accurate.

ECF 77 at pg. 3-4. In order state a prima facie claim under the FCRA, § 1681i, plaintiffs must present evidence showing the CRA's reporting was factually inaccurate: "[A § 1681i(a) claim] 'is properly raised when a particular credit report contains a *factual* deficiency or error that could have been remedied by uncovering additional facts that provide a more accurate representation about a particular entry." *Murphy v. Midland Credit Mgmt., Inc.*, 456 F. Supp. 2d 1082, 1088 (E.D. Mo. 2006) (emphasis in original). Foster admits Chex's reporting was accurate, so Foster therefore cannot meet his prima facie burden under § 1681i—necessitating summary judgment in Chex's favor: "If [the plaintiff] fails to satisfy this initial burden, the consumer, as a matter of law, has not established a violation . . . and a court need not inquire further as to the reasonableness of the procedures adopted by the credit reporting agency." *Id*. (citation omitted); *accord Barsky v. Experian Info. Sols., Inc*, No. 4:15 CV 1017 CDP, 2016 WL 4538526, at *2 (E.D. Mo. Aug. 30, 2016) ("accurate reporting is a complete defense to . . . a § 1681i claim"); *Fahey v. Experian Info. Sols., Inc.,* 571 F. Supp. 2d 1082, 1087 (E.D. Mo. 2008) (same).

Setting aside this dispositive procedural error, I find that Foster nonetheless fails to present evidence of a genuine factual dispute on the threshold issue of the accuracy of Chex's reporting. Despite being given the benefit of discovery, the

only evidence Foster offers to refute Chex's detailed First Bank account statements consists of his two self-serving affidavits.[5] ECF 85-4; ECF 102-1. Foster's affidavits, however, provide only conclusory denials of the accuracy of First Bank's records without any explanation or extrinsic corroboration. Foster's first affidavit does not specifically address the First Bank records; instead, Foster merely alleges: "In addition to never originally owing First Bank anything they began to put on extra penalties, fees and/or interest on the account as the account aged that were not owed." ECF 85-4 at ¶ 9. This flat denial of owing First Bank money is entirely conclusory. Foster's second affidavit, filed after Chex entered the authenticated bank statements into evidence,[6] vaguely alleges: "There are various fees and charges that were not authorized." ECF 102-1 at ¶ 6. However, Foster does not identify any specific unauthorized transaction contained in the statements. Likewise, Foster alleges: "There are various fees and charges that were not mine," but he fails to identify any specific charge he believes is in error. *Id.* at ¶ 7.

---

[5] Chex moved to strike Foster's first and second affidavits. ECF 104. I will deny both motions as moot, as the affidavits do not impact my decision to grant Chex's motion for summary judgment. However, I note that Chex's second motion to strike was meritorious, as Foster's second affidavit was improperly filed over three weeks after the briefing closed on Chex's motion and without leave of Court, in contravention of Local Rule 7-4.01(C).

[6] Chex filed the First Bank records with its reply to Foster's memorandum in opposition. ECF 93. Parties are generally permitted to file additional documentary evidence in support of a reply brief, and I see no issue with Chex's inclusion of the records here, especially given Foster's conclusory denials. *See A.O.A. v. Rennert,* Case No. 4:11 CV 44 CDP, 2017 WL 5478409 (Nov. 15, 2017).

While I must view the evidence in the light most favorable to Foster and give him the benefit of all reasonable inferences, "it is black letter summary judgment law that a conclusory, self-serving affidavit will not defeat an otherwise meritorious summary judgment motion." *Keiran v. Home Capital, Inc.*, 858 F.3d 1127, 1132 (8th Cir. 2017); *see also Chavero-Linares v. Smith*, 782 F.3d 1038, 1041 (8th Cir. 2015) (internal quotation marks, citation, and alteration omitted) ("A properly supported motion for summary judgment is not defeated by self-serving affidavits. Rather, the plaintiff must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor."); *Brenner v. Am. Educ. Servs.*, No. 4:12CV1631 HEA, 2017 WL 1281425, at *1 (E.D. Mo. Apr. 6, 2017) (citation omitted) ("self-serving, conclusory statements without support are not sufficient to defeat summary judgment.").

Foster refers to two cases from this District (*Murphy*, 456 F. Supp. 2d, and *Fahey*, 571 F. Supp. 2d) in support of his argument that his affidavits alone are sufficient to survive summary judgment. ECF 84 at pg. 4-5. However, these cases are factually distinguishable. In both cases, plaintiffs survived defendant CRAs' summary judgment motions by submitting affidavits contesting their purported *ownership* of disputed accounts on their credit reports. *Murphy*, 456 F. Supp. 2d at 1089; *Fahey*, 571 F. Supp. 2d at 1088. Here, by contrast, there is no dispute as to the identity of the account holder—Foster admits that he opened the account with

First Bank; at no point does he allege that he lost sole access, control, or supervision over the account. ECF 85-4 at ¶ 7. The account records show Foster routinely deposited and withdrew money from the account in his name. ECF 93-2. The records further establish that the information Chex reported—that the account was charged-off for non-sufficient funds of $779.88—was factually accurate. *Id*. Foster's conclusory affidavits are simply inadequate to overcome the detailed factual evidence Chex offers in support of its motion. *Kieran*, 858 F.3d; *Chavero-Linares*, 782 F.3d.

However, even if I were to ignore Foster's failure to respond to Chex's statement of facts, and even if I were to hold that Foster had established a triable question on the accuracy of Chex's reporting, Chex is still entitled to summary judgment because it conducted a reasonable reinvestigation of Foster's account. The CRA reinvestigation requirement is set forth in 15 U.S.C. § 1681i(a)(1)(A):

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly . . . of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . .

While the definition of "reasonable" is not provided within the statute, courts have held that a CRA's duty "is not the same as the duty a furnisher of credit information has under 15 U.S.C. § 1681s-2(a)(8)(E)." *Edeh*, 974 F. Supp. 2d, at

11

1236. "[A] CRA conducts a reasonable reinvestigation by 'notify[ing] the furnisher of the disputed information of the substance of the dispute and provid[ing] it with all relevant information received from the customer.'" *Id.* (quoting *Paul*, 793 F. Supp. 2d, at 1102); *see also Gorman v. Wolpoff & Abramson, LLP,* 584 F.3d 1147, 1156–57 (9th Cir. 2009) ("the CRA's 'reasonable reinvestigation' consists largely of triggering the investigation by the furnisher.").

As noted above, Chex parroted the substance of Foster's claim—nearly verbatim—in its form letter[7] to First Bank. ECF 77-1. While a CRA may be obligated to independently investigate the furnisher's data in certain situations, such as where "the consumer [alerts] the reporting agency to the possibility that the source may be unreliable," Foster's dispute letter acknowledged he had a checking account at First Bank,[8] and he did not otherwise call into question the reliability of First Bank's records. *Edeh*, 974 F. Supp. 2d, at 1236 (quoting *Cushman v. Trans Union Corp.,* 115 F.3d 220, 225–226 (3d Cir.1997)). Accordingly, Chex fulfilled

---

[7] I note here that Foster's repeated contentions that Chex's form did not "tell [First Bank] to research the account" are entirely without merit, as Chex's letter clearly directs the bank to respond "after [its] research is completed." ECF 77-1. Further, courts routinely uphold CRAs' use of standardized consumer dispute forms. *See Garrett v. Experian Info. Solutions, Inc.*, No. 11–12523, 2012 WL 1931324, *6 (E.D. Mich. May 29, 2012) (collecting cases) (holding "many courts have held[ ] the practice of using [automated consumer dispute verification forms] in the reinvestigation process is reasonable as a matter in law").

[8] For this reason, I agree with Chex that there was no reason for it to forward Foster's driver's license to First Bank. Foster offers no explanation for the inclusion of the St. Louis Community Credit Union account in his dispute, nor any caselaw support for his contention that Chex was required to forward it to First Bank. In fact, precedent supports the opposite: "No language in [§ 1681i] requires a CRA to forward documents to data furnishers to satisfy its obligation." *Paul*, 793 F. Supp. 2d, at 1098.

its duty to reasonably reinvestigate Foster's dispute by timely submitting the substance of the dispute to First Bank and triggering First Bank's investigation of Foster's account. This is sufficient as a matter of law, and Chex's motion for summary judgment is granted for this additional reason. *See Id.*, at 1236-37; *Paul*, 793 F. Supp. 2d, at 1101.

## Foster's Motion for Summary Judgment

I consider Foster's motion for summary judgment separately and on its own merits. *Husinga*, 519 F. Supp. 2d at 942. Foster's motion fails for several reasons. First, consistent with his pattern of ignoring the Court's Local Rules, Foster did not attach a statement of uncontroverted material facts to his motion for summary judgment, in contravention of Local Rule 7-4.01(E). This procedural failure alone is adequate grounds to deny Foster's motion. *Jones v. Corizon Med. Servs.*, No. 1:16-CV-55 SNLJ, 2017 WL 2403750, at *3 (E.D. Mo. June 2, 2017) (denying a motion for summary judgment where the movant failed to file a statement of uncontroverted material facts).

More significantly, however, Foster's memorandum in support seemingly argues that I should deny the motion itself. The excerpt below reflects one of the numerous times Foster argues—in his memorandum in *support* of his motion for summary judgment—that there is a genuine dispute over a material issue of fact:

> The facts that are disputed are that (a) he does not owe First Bank any money as the overdraft fees were erroneous; (b) any extra fees,

13

> penalties, fees, and/or interest First Bank added on the account were
> not owed; and (c) Plaintiff had repeatedly dispute the charges with
> First Bank and maintained that his account was never delinquent.

ECF 85 at pg. 4. Foster's prima facie claim requires him to prove Chex's reporting was factually inaccurate; so, if I were to grant summary judgment in Foster's favor, I would necessarily have to find there is no genuine dispute as to Foster's claim that he did not owe any money to First Bank. Foster instead asserts the opposite.[9] Further, Chex has presented detailed documentary evidence showing that its reporting was, in fact, accurate. ECF 93-2. Accordingly, because Foster admits there is a dispute over this threshold element of his § 1681i claim, and the record evidence shows the dispute to be genuine, Foster's motion for summary judgment is denied.

## Sanctions

Foster's motion for summary judgment betrays his counsel's blatant disregard for the Court's Local Rules and the federal summary judgment standard. Fed. R. Civ. Pro. 56(a). Foster's failure to file a statement of material facts is a significant—yet plausibly innocuous—error. However, I am confounded by Foster's inexplicable decision to repeatedly argue *against* his motion within the

---

[9] Even more egregiously, Foster's reply to Chex's memorandum in opposition states: "Plaintiff has met their burden by submitting their affidavit, contesting Defendant's evidence and asserting the tradelines were inaccurate. Viewing the facts in the light most favorable to Plaintiff, the accuracy of reporting would be a question of fact for a jury." ECF 99 at pg. 4. Foster thus directly argues against his motion for summary judgment in his own supporting brief.

14

text of his own supporting briefs.  In any event, I find Foster's motion was filed in bad faith, as it was entirely devoid of merit and served no purpose beyond imposing additional expenses on Chex.  Accordingly, I impose sanctions pursuant to the civil liability provisions of the FCRA, § 1681, which provide:

> On a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion or other paper.

15 U.S.C. §§ 1681o(b) and n(c).  I award Chex reasonable attorney's fees incurred in filing the documents listed as ECF 94 and ECF 95, which are Chex's documents filed in response to Foster's bad faith motion.  I believe the sanctions listed here are sufficient, so I do not include attorney's fees incurred in relation to Chex's motions to strike.

As there are no remaining issues,

**IT IS HEREBY ORDERED** that Defendant Chex Systems, Inc.'s Motion for Summary Judgment [75] is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff Rodney Foster's Motion for Summary Judgment [83] is **DENIED.**

**IT IS FURTHER ORDERED** that Chex's Motion for Extension of Time [89] is construed as a Request for Leave to File Out Of Time, and is **GRANTED**.

**IT IS FURTHER ORDERED** that Chex's Motions to Strike [90 and 104]

are **DENIED** as moot.

**IT IS FURTHER ORDERED** that limited attorney's fees as set forth herein are awarded to Chex as a sanction for Foster's bad faith filing.

A separate judgment in accord with this Memorandum and Order is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 28th day of October, 2019.